HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DARRELL WHITE,<br><br>             Plaintiff,<br><br>   v.<br><br>BURLINGTON NORTHERN SANTA FE RAILROAD CO.,<br><br>             Defendant. | CASE NO. C15-5145 RBL<br><br>ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

THIS MATTER is before the court on Defendant Burlington Northern Santa Fe Railroad's Motion for Summary Judgment [Dkt 58]. Plaintiff Darrell White (an African American) worked as a BNSF carman for over 17 years. He regularly used FMLA leave for chronic pain. BNSF twice accused White of fraudulent FMLA use but found no wrongdoing. White interpreted BNSF's accusations as harassment and reported them to BNSF's hotline.

In 2013, White and his Caucasian coworker Cameron Rowe were involved in a physical altercation at work. Rowe suffered visible injuries but White did not. At the time, White was in the final stage of progressive discipline for his tardiness while Rowe had a clean record. BNSF terminated both employees, later reinstating only Rowe and not White.

White sued BNSF for violating the Civil Rights Act and the Washington Law Against Discrimination by refusing to reinstate him on the basis of his race and instead rehiring his Caucasian coworker fired for the same offense. White also claims BNSF refused to reinstate him because he opposed BNSF's unlawful FMLA harassment.

BNSF seeks summary judgment on White's claims, arguing his race discrimination claim is time barred and unsupported by the evidence, and his FMLA retaliation claim fails to identify a FMLA-protected opposition activity. Additionally, BNSF asserts both claims fail because White cannot establish BNSF's legitimate nondiscriminatory reasons for his non-reinstatement are pretextual.

In discovery, BNSF learned of White's prior felony convictions that he failed to report in his employment application. BNSF argues it is entitled to summary judgment on it's after-acquired evidence defense, because it would have terminated White had it known his criminal history. White claims BNSF is not entitled to summary judgment on its defense because it failed to prove it certainly would have fired White for his misconduct.

I. **FACTS**

BNSF hired Darrell White in 1997. White had a clean disciplinary record apart from tardiness violations and a write up for wearing a bike helmet at work in 2011 or 2012. He generally maintained positive, collegial, respectful working relationships.

As one of the few racial minorities on staff, White's coworkers occasionally targeted him with racially insensitive remarks such as the pejorative term "n*****." White also heard racist terms directed at other minorities including Mexicans, Asians, and Native Americans. In 2004 White's Caucasian co-worker called White a "f****** n*****." White reported the incident to a foreman who told him "sometimes you need to know when to let things go." [Dkt 75 at 4].

White applied for and began using doctor-approved FMLA leave in 2007 for chronic right shoulder and elbow pain. In March 2010, White's supervisor accused him of fraudulent FMLA use. White denied the allegation and a heated discussion ensued, after which, BNSF began closely monitoring White's attendance. White reported BNSF's false accusation and time sheet scrutiny to BNSF's hotline. BNSF investigated White's claim but failed to contact him directly or visit his work site. BNSF found no wrongdoing and continued scrutinizing White's attendance.

In 2011, White discovered a noose openly displayed around his work area. Two Caucasian coworkers admittedly hung the noose as a "joke." White reported the incident to a foreman but BNSF failed to discipline the culprits.

BNSF's hand-scanning device for recording attendance regularly malfunctioned causing late arrivals. In 2012 BNSF held a series of hearings to assess disciplinary action for White's three to eight minute tardiness, which might have been caused by the faulty scanner. BNSF deviated from its normal practice of grouping together questionable late occurrences instead treating them as separate offenses requiring more severe discipline. [Dkt 75 at 11]. In addition, each hearing followed an untimely investigation. BNSF assessed discipline over the objection of White's union representative and in violation of his unions' Collective Bargaining Agreement, requiring investigations within twenty days of each lateness occurrence.

In July 2013, White received BNSF's investigation notice for his allegedly fraudulent FMLA use on a day he was not scheduled to work. [*Id.*]. White again reported the false accusation to BNSF's hotline and BNSF subsequently canceled its investigation.

On August 7, 2013, White was in his office listening to his radio when his co-worker Rowe entered and began listening to music on his phone. [*Id.* at 5]. Rowe and White exchanged

heated words regarding the dueling radios. Rowe threatened White, saying "I will kick your old ass." [*Id.*]. Rowe grabbed White's chest area and White grabbed Rowe back, pushing him against a wall and holding his neck to subdue him. [*Id.*]. When the supervisors arrived Rowe had red marks on his neck, while White had no visible injuries. BNSF found both men violated its conduct and altercation policies and terminated them effective September 5, 2013.

On October 2, 2013, the union filed grievances for both White and Rowe, seeking reinstatement. BNSF denied both grievances. White challenged BNSF's denial and again requested reinstatement through his union on January 17, 2014. White also requested arbitration for his reinstatement through the National Railroad Adjustment Board. In July, 2014 Rowe entered into a pre-trial settlement agreement with BNSF after appealing an unsuccessful OSHA claim to an ALJ. In August, through his former coworkers White learned of Rowe's reinstatement.

In response to Rowe's reinstatement White filed a Charge of Discrimination with the EEOC in October, 2014. Pursuant to his Notice of Right to Sue, White filed this lawsuit against BNSF in March, 2015. White claims BNSF violated Title VII and WALD by refusing to rehire him on the basis of his race. White also claims BNSF violated FMLA by refusing to rehire him in retaliation for reporting BNSF's FMLA harassment.

In discovery, BNSF uncovered White's criminal history that he failed to report on his 1996 employment application. White's history includes a 1984 first degree robbery conviction with four counts of second degree burglary and a 1996 conviction for cocaine possession.

BNSF seeks summary judgment first on White's untimely discrimination claim arguing White failed to identify a similarly situated individual who was not dismissed. Second, BNSF seeks summary judgment on White's retaliation claim because White did not engage in a FMLA

ORDER DENYING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT - 4

protected opposition activity. BNSF also argues both claims fail because its reason for denying White's reinstatement was his tardiness violations and his failure to seek reinstatement through settlement, not his race. White failed to establish BNSF's legitimate nondiscriminatory reasons were pretextual. Third, BNSF seeks summary judgment on its after-acquired evidence defense, arguing had it known White's criminal history prior to his termination it would have either denied him employment in the first place or dismissed him for dishonesty in his application.

White claims that BNSF failed to meet its burden of proof that the after-acquired-evidence of his criminal history would have certainly led to his dismissal prior to his actual termination. He argues that BNSF's evidence merely shows he could have been fired, while the standard for the after-acquired evidence defense requires more certainty.

## II.   DISCUSSION

### A.  Summary Judgment Standard

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "summary

judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

### B.  Refusing to Reinstate on the Basis of Race

White asserts BNSF discriminated against him on the basis of his race in violation of Title VII and WLAD by refusing to reinstate him and instead rehiring his Caucasian coworker who was terminated for his participation in the same altercation.

BNSF seeks summary judgment on White's discrimination claim first arguing White failed to file a timely EEOC charge concerning his dismissal. Second, BNSF contends White's claim fails because he cannot identify a similarly situated employee who was not dismissed. BNSF also argues its decision to rehire only Rowe was due to Rowe's settlement offer and clean disciplinary record, not his race. Third, BNSF believes it is entitled to summary judgment because White failed to assert BNSF's nondiscriminatory reasons are pretextual.

White first argues the discrimination claim for his dismissal is subject to waiver, estoppel, or equitable tolling and not therefore time-barred. Alternatively, White claims the discriminatory incident was his non-reinstatement, not his dismissal, the former being within the 300-day limitations period. Second, White claims Rowe is similarly-situated in terms of his qualifications and clean disciplinary history. Third, he asserts BNSF's nondiscriminatory reasons are pretextual because they are false. White repeatedly sought reinstatement through various legal avenues and he has a clean disciplinary record, besides wearing a bike helmet at work and receiving questionable tardiness violations.

#### a.  Timely filing

To bring a civil action under Title VII, White must fulfill the requirements of 42 U.S.C. 2000e-5(e) and (f) by filing a timely charge of discrimination with the EEOC and by receiving

and acting upon the EEOC's statutory Notice of Right to Sue. *McDonnell Douglass Corp v. Green,* 411 U.S. 792, 798 (1973). Title VII "precludes recovery for discrete acts of discrimination or retaliation that occur outside the statutory time period." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002). Timely filing of an EEOC discrimination charge, like the statute of limitations, is subject to waiver, estoppel, and equitable tolling. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982). The Title VII limitations period begins to run when "the complainant knows or reasonably should know that the challenged action has occurred." *McWilliams v. Escambia County Sch. Bd.*, 658 F.2d 326, 328 (5th Cir. 1981).

White correctly asserts Title VII's timely EEOC filing requirement is not jurisdictional, but rather subject to waiver, estoppel, and equitable tolling. He fails, however, to show that BNSF waived this defense, or that estoppel or equitable tolling should apply. White's dismissal claims is time-barred because his dismissal falls outside the 300-day limitations period and he failed to assert any reason for extending the statutory limit.

The correct starting point for the 300-day limitation period is the day White discovered Rowe's reinstatement, one month after it occurred. At that point, White knew, and reasonably should have known, that the discriminatory act occurred. White filed his EEOC charge approximately 60 days from that date and timely acted upon his Notice of Right to Sue. Thus, BNSF's Motion for Summary Judgment on the timeliness of White's EEOC charge is DENIED.

**b. Prima facie elements of Title VII claim**

To establish a prima facie case of discrimination under Title VII, White must show that he (1) belongs to a protected class; (2) performed his job satisfactorily, was qualified, and met the legitimate expectations of the employer; (3) suffered an adverse employment action; and (4) BNSF treated him differently than a similarly situated employee not belonging to the same

1  protected class. *See Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir.

2  2006). White's burden of establishing a prima facie case of discrimination "is not onerous." *See*

3  *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253–255 (1981).

4        Courts analyze Title VII claims through the *McDonnell Douglass* burden-shifting

5  framework at the summary judgment stage. Washington courts also follow *McDonnell Douglass*

6  for WLAD discrimination claims. *See Knight v. Brown*, 797 F. Supp 2d 1107, 1133 (W.D. Wash.

7  2011). After White establishes a prima facie case, the burden shifts to BNSF to articulate a

8  nondiscriminatory reason for the challenged action. *See McDonnell Douglass* 411 U.S. at 802.

9  The burden then shifts back to White to prove the reason is pretextual. *Id.* at 804. White may

10  show pretext by demonstrating BNSF's reason is inconsistent or otherwise not believable.

11  *Dominguez-Curry v. Nev. Transp. Dep't*, 424 F.3d 1027, 1037 (9th Cir. 2005).

12        White properly established a prima facie discrimination case. He is a member of a

13  protected class. No evidence suggests White was unqualified or that he did not perform his job

14  satisfactorily. White suffered an adverse action when BNSF refused to rehire him. BNSF treated

15  White differently from his Caucasian co-worker Rowe, when it reinstated Rowe and not White.

16  Rowe was similarly situated to White because he was dismissed for his involvement in the same

17  altercation, he had a similarly clean disciplinary record, and had similar or lesser qualifications.

18        BNSF established two legitimate nondiscriminatory reasons for reinstating only Rowe.

19  First, White's physical violence was a standalone dismissible violation. Additionally, White was

20  in the final stage of a progressive disciplinary program for his tardiness, wherein any violation

21  could have resulted in his dismissal. Second, BNSF reinstated Rowe as part of a settlement

22  agreement while White failed to pursue similar legal remedies.

23

24

White raised a genuine issue of material fact as to whether BNSF's nondiscriminatory reasons were pretextual. First, BNSF dismissed both Rowe and White because each violated company policy by engaging in a verbal and physical altercation in the workplace. It is questionable, therefore, whether BNSF legitimately relied on White's participation in the altercation as the sole reason for denying his reinstatement. Second, mechanical malfunctions may have caused some of White's tardiness, BNSF may have unfairly aggregated his offenses, and BNSF's investigations were untimely in violation of the CBA. It is therefore uncertain whether BNSF properly relied on White's disciplinary status. Third, while White did not offer an identical settlement agreement to Rowe, he did repeatedly seek reinstatement through various legal avenues. Thus BNSF cannot legitimately claim White failed to similarly pursue his reinstatement.

White has successfully established a prima facie case of discrimination and raised genuine issues of material fact whether BNSF's nondiscriminatory reasons were pretextual. BNSF's Motion for Summary Judgment on White's discrimination claim is therefore DENIED.

### C. FMLA Retaliation

White argues BNSF retaliated against him by refusing to rehire him for opposing BNSF's FMLA harassment. He claims he made two hotline calls reporting BNSF's false accusations which caused BNSF to scrutinize his attendance and later refuse to rehire him.

BNSF claims White did not engaged in a protected opposition activity. On his first hotline call White reported BNSF questioning his FMLA use, but such questioning is not prohibited by FMLA. White's second call pertained to racial discrimination, not FMLA harassment. Even if White engaged in protected opposition activity, BNSF argues, there is no

1  rational relationship between his calls and non-reinstatement. Additionally, White cannot
2  establish BNSF's previously stated nondiscriminatory reasons are pretextual.
3        The Family Medical Leave Act, 29 U.S.C. § 2615(a) creates two interrelated, substantive
4  rights for employees: (1) to take up to twelve weeks of leave for personal medical reasons, or for
5  other protected reasons, and (2) to return to his or her original position or an equivalent position
6  upon return from leave. *See Bachelder v. American West Airlines, Inc.*, 259 F.3d 1112, 1122 (9th
7  Cir. 2001). Section 2615(a)(2) restricts employers from retaliating or discriminating against
8  employees opposing unlawful FMLA practices.
9        White must establish a prima facie case of retaliation under the *McDonnell Douglass*
10 burden shifting framework. *See Crawford v. JP Morgan Chase NA*, 983 F. Supp. 2d 1264, 1269
11 (W.D. Wash. 2013). To establish a prima facie case of retaliation White must prove (1) he
12 engaged in a protected FMLA opposition activity, (2) BNSF's employment action adversely
13 affected him, and (3) there is a causal connection between his activity and the adverse action. *See*
14 *id.* The burden then shifts to BNSF to articulate a nondiscriminatory reason for the adverse
15 action, after which, the burden shifts back to White to prove BNSF's nondiscriminatory reason is
16 pretextual. *Id. citing Sanders v. City of Newport*, 657 F.3d 772, 777 n.3 (9th Cir. 2011).
17       White successfully established a prima facie case of retaliation. There is a material
18 question of fact whether White's hotline calls were protected opposition activities. BNSF
19 correctly states that legitimately questioning an employee's FMLA use is not an unlawful FLMA
20 practice. There is, however, evidence to support White's claim that BNSF's investigation was
21 harassment under the circumstances, especially since there was no evidence of any actual FMLA
22 abuse. A material question of fact exists whether White's second call concerned FMLA
23 harassment; White claims it did while BNSF claims it did not. White indisputably suffered an
24

adverse employment action. A reasonable juror could find White's first complaint motivated BNSF to scrutinize White's tardiness and assess unreasonable discipline, which influenced BNSF's decision not to rehire White. As previously discussed, White met his burden of establishing BNSF's nondiscriminatory reason for his non-reinstatement was pretextual.

White successfully established a prima facie case of FMLA retaliation and raised genuine issues of material fact whether BNSF's nondiscriminatory reasons were pretextual. BNSF's Motion for Summary Judgment on White's retaliation claim is therefore DENIED.

### D. After-Acquired Evidence

BNSF argues it is entitled to partial summary judgement for discovering White's undisclosed criminal history. Had White included his convictions on his employment application, BNSF claims it would not have hired him. Additionally, BNSF asserts White's dishonesty is a standalone dismissible violation that would have resulted in his termination, especially in light of his tardiness violations.

White claims BNSF failed to establish that it *would have* fired White had it known of his dishonesty prior to his termination. White argues BNSF improperly considered his tardiness violations because BNSF could have discovered his dishonesty prior to these violations. White also asserts BNSF's evidence of other employees' dismissal for similar acts of dishonesty is insufficient to satisfy BNSF's burden of proof.

BNSF must establish White's criminal history and associated dishonesty "was of such severity that the employee in fact *would have* been terminated on those grounds *alone* if the employer had known of it at the time of discharge." *McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 362 (1995) (emphasis added). It is insufficient to show BNSF *could have* fired White, rather BNSF must prove it *would have* done so. If BNSF meets its burden of proof, it is

1 entitled to summary judgement on its affirmative defense and White's damages will be

2 accordingly limited. *See O'Day v. McDonnell Douglass Helicopter Co.*, 79 F.3d 756, 758–59

3 (9th Cir. 1996).

4     BNSF failed to prove by the preponderance of the evidence that White's disclosed

5 criminal history would have precluded his employment. BNSF's evidence on this claim consists

6 of the following human resource employee's declaration [Dkt 61 at 2]:

> 5. On the first page of the Employment Application, Mr. White answered "NO" to the question "Have you ever been convicted of a crime? (A conviction record will not necessarily bar applicants from employment.)"
>
> 6. If Mr. White had answered that question by reporting that he had been convicted of felony cocaine possession earlier that year, BNSF would not have extended him a job offer

BNSF fails to explain why the statement in ¶ 5 "(A conviction record *will not necessarily bar* applicants from employment)" does not alter the declarant's conclusion that White's conviction record would have barred his employment in this case.

    In attempting to establish that BNSF would have dismissed White for his dishonesty, BNSF incorrectly considered White's tardiness violations. BNSF must prove that White's dishonesty *alone* would have led to his dismissal. BNSF's policy for employee performance accountability merely states that standalone dismissible violations, such has dishonesty regarding "job related subjects," *may* result in immediate dismissal. [Dkt 59 Exhibit A]. It is unclear whether White's dishonesty would have resulted in his dismissal. Evidence of other employees' dismissal notices for dishonesty violations is similarly insufficient. Each notice states, "In assessing discipline, consideration was given to your personnel record," suggesting BNSF considered other factors besides the employees' dishonesty. [Dkt 59 Exhibit J].

BNSF failed to establish by the preponderance of evidence that White would have been either fired or not hired had he disclosed his criminal history prior to his dismissal. A reasonable juror could find that BNSF would have hired White despite his convictions, and that BNSF would not fire him for his dishonesty alone. BNSF's Motion for Summary Judgment on its after-acquired evidence is therefore DENIED.

## CONCLUSION

BNSF's Motion for Summary Judgment on all claims [Dkt #58] is DENIED.

**IT IS SO ORDERED.**

Dated this 27th day of February, 2017.

Ronald B. Leighton
United States District Judge